IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROSEMARY E. HOSKINS,

        Plaintiff,

vs.                                                                                    No. CIV 02-1138 WDS

JO ANNE B. BARNHART, Commissioner
of the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Decision filed on April 30, 2003. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for disability insurance benefits. The Court, having considered Plaintiff's Motion [docket # 11] and Memorandum Brief [docket # 12], Defendant's Response [docket # 14], Plaintiff's Reply [docket # 15], the administrative record and applicable law, finds that Plaintiff's Motion should be **DENIED,** and that this matter should be dismissed with prejudice.

## I.  Background

Plaintiff, who was born on October 4, 1948, alleged that she became unable to work as a result of her disabling conditions on January 20, 2000. Tr. 43. Plaintiff and her husband own a motel. Tr. 275, 279. Before the onset of her alleged disability, Plaintiff cleaned the motel, took reservations, and did anything else that needed to be done at the motel. Tr. 280. Plaintiff was also the fire chief in Williamsburg, New Mexico until approximately February, 2000. Tr. 276, 285. In approximately June of 1999, Plaintiff began complaining of pain in her right hip. Tr. 124. She was subsequently diagnosed with a heart condition, and on January 20, 2000, Plaintiff underwent aortic

bypass surgery to treat aortoiliac occlusive disease.  Tr. 130-33.  Approximately one month after the

surgery, Plaintiff complained of numbness in her right thigh.  Tr. 164.  In May 2000, she complained

of numbness in both thighs.  Tr. 162.  Plaintiff asserts that, in addition to her leg numbness and pain,

she began having back pain after her bypass surgery,  Tr. 280, and is also incontinent, Tr. 282-83.

Plaintiff filed her initial application for disability insurance benefits ("DIB") under Title II of

the Social Security Act on October 31, 2000.  Tr. 43-45.  After Plaintiff's application was denied at

the initial level, Tr. 29-31, and at the reconsideration level, Tr. 35-38, Plaintiff appealed by filing a

request for hearing by an administrative law judge ("ALJ") on July 24, 2001, Tr. 39-40.

The hearing before the ALJ was held on April 9, 2002, at which Plaintiff appeared and was

represented by an attorney.  Tr. 271-295.  Plaintiff alleged that she was disabled as a result of leg and

back pain, lower body numbness, incontinence, and depression.  Tr. 280-85.  In a decision dated July

12, 2002, the ALJ denied Plaintiff's claim for DIB.  Tr. 12-20.  Plaintiff then filed a request for review

with the Appeals Council on July 19, 2002.  Tr. 6.  The Appeals Council denied Plaintiff's request

for review on August 19, 2002, Tr. 4-5, and thereby rendered the ALJ's decision the final decision

of the Commissioner of Social Security ("Commissioner").  *See* 20 C.F.R. § 404.981.

On September 9, 2002, Plaintiff filed this action for judicial review of the Commissioner's final

decision pursuant to 42 U.S.C. § 405(g).  After consent by the parties, this case was reassigned to

the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) on January 23, 2004

[docket #17].

## II.  Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported

by substantial evidence and whether correct legal standards were applied.  *Andrade v. Secretary of*

*Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993).   In determining whether the

Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the

evidence, nor should it substitute its judgment for that of the Commissioner.   *Glass v. Shalala,* 43

F.3d 1392, 1395 (10th Cir. 1994).   Instead, the Court should meticulously examine the record to

determine whether the Commissioner's decision is supported by "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."   *Williams v. Bowen,* 844 F.2d

748, 750 (10th Cir. 1993).   The "substantial evidence" standard is satisfied by more than a scintilla,

but less than a preponderance, of evidence.   *Id.*   However, evidence is not substantial if it is

overwhelmed by other evidence or if it constitutes a mere conclusion.   *Ray v. Bowen,* 865 F.2d 222,

224 (10th Cir. 1989).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and

entitled to benefits under the Social Security Act.   *See Williams,* 844 F.2d at 750-52; 20 C.F.R. §

404.1520.   First, the question is whether the claimant is engaged in substantial gainful activity.

*Williams,* 844 F.2d at 750.   If so, the claimant is not disabled; if not, the analysis proceeds to step

two.   *Id.*   At the second step, the question is whether the claimant has an impairment or combination

of impairments that is severe.   *Id.*   If not, the claimant is not disabled; however, if the claimant makes

the required showing of severity, the analysis proceeds to step three.   *Id.* at 750-51.   At step three,

the question is whether the claimant has an impairment or combination of impairments that meets or

equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed

Impairment").   *Id.* at 751.   If so, the impairment is considered to be presumptively disabling.   *Id.*   If

not, the analysis proceeds to step four, where the question is whether the impairment prevents the

claimant from doing past work.   *Id.*   The claimant is not disabled if he or she can perform past work.

*Id.*  If the claimant cannot perform past work, the analysis proceeds to step five, where the burden

shifts to the Commissioner to establish that the claimant has the residual functional capacity ("RFC")

"to perform other work in the national economy in view of his age, education and work experience."

*Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)).  The claimant is entitled to benefits unless

the Commissioner establishes that the claimant can "perform an alternative work activity and that this

specific type of job exists in the national economy."  *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577,

579 (10th Cir. 1984)).

### III.  Summary of the ALJ's Decision

At step one of the sequential five-step analysis, the ALJ found that Plaintiff had not engaged

in substantial gainful activity since her alleged onset date.  Tr. 13-14.  The ALJ found at step two that

Plaintiff's impairments due to aortoiliac occlusive disease status post femoral bypass surgery, and

degenerative changes of her lumbar spine were severe.  Tr. 14.  The ALJ also found that Plaintiff had

non-severe impairments of hypertension, hyper lipidemia, and left lateral epicondylitis.  Id.  At step

three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal any Listed

Impairment.  Tr. 15.  The ALJ determined at step four that Plaintiff retained the residual functional

capacity to perform a significant range of sedentary and light work, Tr. 18, but that she could no

longer perform her past relevant work as a manager/owner/operator of a motel, Tr. 17.  At step five,

the ALJ determined that Plaintiff could work as a desk clerk at a motel, a night auditor, and a

reservation clerk.  Tr. 18.  Plaintiff contends that the ALJ erred in according improper weight to

opinions by two of Plaintiff's treating physicians, and in assessing her credibility.

### IV.  Discussion

### A.  Weight Accorded to Opinions of Plaintiff's Treating Physician

Plaintiff takes issue with the weight the ALJ assigned to certain statements made by two of Plaintiff's treating physicians.  The statements are as follows.  Plaintiff consulted a physician for her leg and back pain at the Ben Archer Health Center ("BAHC") during the relevant time period.  *See* Tr. 281.  On October 19, 2000, Plaintiff went to BAHC for a follow-up visit for lower extremity pain and shortness of breath.  Tr. 218.  The physician who treated her on that date wrote that Plaintiff's neuropathy was causing pain and loss of strength "to the point that she can't [sic] no longer work." *Id.*  Plaintiff also saw Dr. Javed Iqbal, who is a neurologist, during the relevant time period.  On October 1, 2001, Dr. Iqbal, wrote, among other things, that Plaintiff was not working.  Tr. 268.

Although Plaintiff's first argument is not clear, she may contend that the ALJ improperly rejected statements by her treating doctors to the effect that she was unable to work.  In assessing Plaintiff's RFC, the ALJ wrote that "[b]oth the treating neurologist Dr. Iqbal and the claimant's primary care physician repeated the claimant's complaints of leg pain and her statements to them that she was unable to work.  However, both of these physicians were simply repeating the claimant's statements. Their clinical and laboratory findings do not support this conclusion."  Tr. 15.  Plaintiff takes issue with the ALJ's determination.  It is true that an ALJ must give controlling weight to a treating physician's medical opinion if it is well-supported and it "is not inconsistent with other substantial evidence in the record."  *E.g., McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002).  A treating physician may also express an opinion as to whether his or her patient is totally disabled.  However, a physician's opinion that a claimant is disabled, or that the claimant cannot work, is not a medical opinion and is not entitled to any special significance.  *See* 20 C.F.R. §

404.1527(e)(1), (3).  These kinds of opinions are "not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the Secretary."  *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir. 1994).  I therefore find that the ALJ could properly reject opinions expressed by Plaintiff's treating physicians that Plaintiff was unable to work.[1]

Plaintiff may also contend that the ALJ erred in discounting other opinions expressed by Dr. Iqbal.  In this regard, Plaintiff cites Dr. Iqbal's notes indicating, among other things, that Plaintiff is hypersensitive and has burning sensations and dysthesias; suffers numbness, pain, and weakness in her lower extremities; that the medication she tried did not provide any benefit; that her symptoms were worse after surgery; that she did not show improvement for several months; and that her symptoms were suspicious for neuritis or femoral neuropathy/upper plexopathy.  Plaintiff fails to clarify, however, what opinions she contends the ALJ discounted.

The record indicates that Plaintiff was referred to Dr. Iqbal for a neurologic evaluation in July 2000. Tr. 194-95.  After noting Plaintiff's complaints of leg numbness and pain, Dr. Iqbal ordered an MRI of Plaintiff's lumbar spine and a nerve conduction study.  Tr. 192-93.  On July 12, 2000, Dr. Iqbal noted that Plaintiff's MRI revealed degenerative changes without any disc herniation or nerve root compression, Tr. 193, and characterized her results as "unremarkable,"  Tr. 191.  On the same date, Dr. Iqbal also wrote that Plaintiff's nerve conduction study was normal, and indicated no EMG/NCV sign of peripheral nerve dysfunction.  Tr. 192.  Dr. Iqbal continued to see Plaintiff for follow-up visits until at least October 2001.  On October 1, 2001, which is the last visit to Dr. Iqbal evidenced in the record, Dr. Iqbal wrote that even though an EMG/NCV did not confirm femoral

---

[1]In any event, while Dr. Iqbal wrote that Plaintiff *was not working* on October 1, 2001, I see nothing in the record that would indicate that Dr. Iqbal believed that Plaintiff was *unable* to work.

neuropathy, her symptoms "have been thought to be related to upper plexus problem or femoral neuropathy." Tr. 268. Dr. Iqbal also wrote on that date that Plaintiff "is not working and she has difficulty sitting, standing and ambulating for prolonged period." *Id.*

To the extent that Plaintiff may contend that the ALJ discounted all of Dr. Iqbal's findings, I disagree. The ALJ clearly accepted Dr. Iqbal's objective test and examination results. For example, the ALJ cited Dr. Iqbal's most recent examination of Plaintiff on October 1, 2001 as support for his RFC assessment. The ALJ pointed out that Dr. Iqbal's examination on that date was "essentially normal," and while Dr. Iqbal found that Plaintiff had mild weakness in her right hip flexion, he also found that Plaintiff's muscle strength was otherwise normal, and her gait and station were normal. Tr. 17 (citing Tr. 268). The ALJ also noted that Dr. Iqbal found that an MRI of Plaintiff's lumbar spine showed no evidence of nerve root compression, and that an EMG/NCV study of Plaintiff's right lower extremity was negative. Tr. 17. Rather than discounting these findings by Dr. Iqbal, the ALJ cited them as support for his RFC assessment.

The ALJ suggested, however, that certain notes in Dr. Iqbal's records may have been entitled to less weight because they appeared to be based upon what Plaintiff told Dr. Iqbal. In this regard, the ALJ wrote that Dr. Iqbal was merely repeating Plaintiff's statements when he wrote on October 1, 2001 that Plaintiff "has difficulty sitting, standing and ambulating for prolonged periods." Tr. 17 (citing Tr. 268). Nevertheless, the ALJ appears to have accepted this note, for his RFC assessment specifically includes the following restrictions: Plaintiff can only stand and/or walk for two hours during an eight-hour day; she cannot stand or walk for prolonged periods; and while the ALJ found that Plaintiff could sit for six hours during an eight-hour day, he noted that she must be allowed to sit or stand at her option. Tr. 15, 19. Since the ALJ took Plaintiff's difficulty sitting, standing and

7

ambulating for prolonged periods into account in his RFC assessment, he obviously did not err by discounting that notation in Dr. Iqbal's records.

For the reasons discussed above, I find that Plaintiff has failed to show that the ALJ erred by according improper weight to any opinions by Plaintiff's treating physicians.

### B.  Credibility of Plaintiff's Testimony About Her Functional Limitations

Plaintiff also disputes the ALJ's finding that her testimony about her functional limitations was "credible only to the extent that she is limited to work which requires her to lift and/or carry 10 lbs. occasionally and 5 lbs. frequently; stand and/or walk 2 hours during an 8 hour day; sit for 6 hours during an 8 hour day; not stand or walk for prolonged periods; sit or stand at her option; occasionally climb, stoop, crawl, kneel, or crouch; and occasionally balance." Tr. 17.  According to Plaintiff, the ALJ erred when he failed to consider the "usual tests of credibility" as set forth in *Boyle v. Harris,* 506 F.Supp. 294, 298 (E.D. Pa. 1980).[2]  However, rather than applying case law from a district court outside this circuit, I will apply rulings and regulations promulgated by the Social Security Administration and controlling Tenth Circuit case law.

A two-part inquiry applies in assessing functional limitations that result from pain.  First, the ALJ need not even consider the claimant's subjective pain testimony unless the claimant proves by objective medical evidence that he or she has an impairment that could reasonably be expected to produce pain.  *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993) (citing *Luna v. Bowen,* 834 F.2d 161, 163 (10th Cir. 1987)).  Second, where a claimant has established by objective medical evidence that she has an impairment that could reasonably be expected to produce pain, the ALJ must

---

[2]The *Boyle* case states that "[t]he fact finder must consider factors such as accuracy of memory, opportunity to know the pertinent facts and ability or inability to present them because of intellectual or educational deficiencies."

consider all of the evidence to decide whether he believes the claimant's allegations about the functional limitations that result from the pain. *See* 20 C.F.R. § 404.1529; *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995). Defendant does not dispute that Plaintiff has a pain-producing impairment that could reasonably be expected to produce pain. Indeed, Dr. Iqbal opined on several occasions that Plaintiff may have an upper plexus problem or femoral neuropathy. Tr. 187, 188, 268. Thus, the question is whether the ALJ properly considered all of the evidence to decide whether he believed Plaintiff's testimony about the limitations that result from her pain.

The ALJ based his determination that Plaintiff's testimony about her functional limitations was credible only to a limited extent on the following. First, Dr. Iqbal's findings after his last examination of Plaintiff on October 1, 2001 were essentially normal. Tr. 17 (citing Tr. 268). Second, Dr. Iqbal characterized the results of an MRI study of Plaintiff's lumbar spine as "unremarkable," with no nerve root compression present, and had also written that the EMG/NCV he ordered was normal. *Id.* (citing Tr. 191). Third, the ALJ considered Plaintiff's testimony about her daily activities. Plaintiff testified that she answers the telephone and makes reservations for her motel, she walks across the lot to the Chevron to get coffee in the mornings, she talks and drinks coffee with her brother when he visits, she plays cards and does puzzles with her grandchildren almost every day, and sometimes drives to a fast food restaurant to pick up lunch. Tr. 17 (citing Tr. 277-79). Fourth, the ALJ also considered the findings of a Physical Residual Functional Capacity Assessment completed on February 15, 2001 by physician hired by the Administration. Tr. 15 (citing Tr. 196-203).

Plaintiff contends that the ALJ erred when he relied upon Plaintiff's testimony about her daily activities in order to reject her "other limitations which far exceeded the [ALJ's] findings." According to Plaintiff, the fact that she walks two-hundred feet to get coffee in the mornings, sits

down, then walks back does not support the ALJ's RFC assessment.  Plaintiff contends that the fact

that she drinks coffee with, and talks to, her brother, and plays cards and does puzzles with her

grandchildren, also do not support the ALJ's RFC assessment.  While I agree that these facts alone

might not be sufficient to support the ALJ's RFC assessment, the ALJ was clearly entitled to consider

these facts, along with other evidence, in deciding how Plaintiff's impairments affected her

functioning.  *See Gossett v. Bowen,* 862 F.2d 802 (10th Cir. 1988).  The ALJ did not rely solely upon

Plaintiff's testimony about her daily activities, but also relied upon the lack of objective medical test

results supporting her claims, Plaintiff's treating neurologist's most recent examination, and a Physical

Residual Functional Capacity Assessment conducted in February 2001.  Moreover, I note that the

ALJ carefully restricted the amount of walking Plaintiff could do in her RFC assessment.  As I have

noted above, the ALJ found that Plaintiff could walk only two hours in an eight-hour day, cannot

stand or walk for prolonged periods, and must be allowed to sit or stand at her option.  Tr. 15, 19.

These restrictions seem consistent with Plaintiff's testimony about her daily activities.

Plaintiff also contends that the ALJ was required to accept her testimony about her functional

restrictions because Dr. Iqbal's notes reflect the same limitations Plaintiff testified that she suffers,

and Dr. Iqbal never suggested that Plaintiff magnified or exaggerated her condition.  I disagree with

Plaintiff, for Dr. Iqbal's notes do not reflect the same limitations Plaintiff testified that she suffers.

Plaintiff testified that she has been unable to work since January 20, 2000.  Tr. 279.  By way of

contrast, I find no indication in the record that Dr. Iqbal believed Plaintiff's functional restrictions

rendered her unable to work.  Dr. Iqbal's notes reveal that Plaintiff complained of pain.  Dr. Iqbal's

notes also reveal that he believed Plaintiff may have suffered from femoral neuropathy/upper

plexopathy, Tr. 191, neuritis, Tr. 190, or entrapment neuropathy, Tr. 187.  However, Dr. Iqbal's

10

notes do not clearly express an opinion about the functional restrictions Plaintiff may suffer as a result.  For example, in his latest note dated October 1, 2001, Dr. Iqbal cites Plaintiff's complaints of pain, discomfort, burning, and hypersensitivity, and wrote that she had "difficulty sitting, standing and ambulating for prolonged period [sic]," as well as "difficulty with bending and squatting."  Tr. 268.  At the same time, Dr. Iqbal also wrote that Plaintiff had mild weakness in her right hip flexion, but that her "[o]ther muscles appear to be normal.  Reflexes are preserved.  Left lower extremity strength is normal.  Gait/station is normal.  Coordination is normal." *Id.*  Since I find that Dr. Iqbal's records do not reflect the same limitations Plaintiff testified that she suffers, the ALJ was not required to accept Plaintiff's testimony about her functional limitations.

Courts generally defer to an ALJ's determination of a claimant's credibility. *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995).  In this case, the ALJ explained why he found Plaintiff's testimony about her functional limitations credible only to a certain extent, and cited specific evidence in the record in support of his conclusions.  Moreover, as I have explained above, the ALJ did not totally discount Plaintiff's testimony, but incorporated many specific limitations consistent with her testimony into her RFC assessment.  Accordingly, for the reasons discussed above, I find that Plaintiff has failed to provide a cognizable reason to find that the ALJ erred when he assessed the functional limitations that result from Plaintiff's pain-producing impairments.

### C.  Credibility of Plaintiff's Testimony About Her Pain

Plaintiff also disputes the ALJ's assessment of the credibility of her pain testimony.  Plaintiff contends that the ALJ erred when he dismissed Plaintiff's testimony about her pain with the conclusory assertion that her testimony was not credible.  Plaintiff also asserts that "the claimant's testimony is not inherently suspect merely because the degree of pain alleged cannot be quantified or

11

confirmed by medical findings." I agree that regardless of whether Plaintiff's pain could be quantified or confirmed by objective tests, the ALJ was required to weigh Plaintiff's subjective pain testimony along with other evidence. *See Huston v. Bowen,* 838 F.2d 1125, 1131 (10th Cir. 1988). However, the ALJ did not discredit Plaintiff's pain testimony merely because the degree of her pain could not be confirmed by medical tests, nor did the ALJ simply dismiss her pain testimony with the conclusory assertion that she was not credible.

I note that the fact that a claimant suffers pain, in and of itself, is not sufficient to find the claimant disabled. *Gossett v. Bowen,* 862 F.2d 802, 807 (10th Cir. 1988). Rather, to be disabling, "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful activity." *Id.* (quoting *Brown v. Bowen,* 801 F.2d 361, 362-63 (10th Cir. 1986)). The ALJ did not find that Plaintiff suffers from no pain, but instead found that her pain was not "of an intensity or persistence to prevent work which requires her to lift and/or carry 10 lbs. occasionally and 5 lbs. frequently; stand and/or walk 2 hours during an 8 hour day; sit for 6 hours during an 8 hour day; not stand or walk for prolonged periods; sit or stand at her option; occasionally climb, stoop, crawl, kneel, or crouch; and occasionally balance." Tr. 16. As I have explained above, in reaching this conclusion, the ALJ relied upon results of Plaintiff's objective medical tests, which were normal, results of a physical examination conducted by Dr. Iqbal on October 1, 2001, Plaintiff's testimony about her daily activities, and a Physical Residual Functional Capacity Assessment. Since the ALJ adequately explained his findings, and did not rely solely upon the fact that the degree of her pain could not be confirmed by medical tests, I find that Plaintiff has failed to set forth a valid reason to reverse the ALJ's decision.

## V.  Conclusion and Summary

In sum, I find that Plaintiff has failed to show that the ALJ's decision is not supported by substantial evidence or that incorrect legal standards were applied.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision [docket # 11] is **DENIED.**

**IT IS FURTHER ORDERED** that judgment shall be entered in favor of the Defendant, and this matter shall be dismissed with prejudice.

 

                        **W. DANIEL SCHNEIDER**
                        **UNITED STATES MAGISTRATE JUDGE**